IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**VIVIAN LAWON FERGUSON,**                    Case No. 4:16 CV 271

      Plaintiff,                                    Judge Benita Y. Pearson

      v.                                            Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

      Defendant.                                    REPORT AND RECOMMENDATION

### INTRODUCTION

Plaintiff Vivian Lawon Ferguson ("Plaintiff") filed a complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny supplemental security income ("SSI") and disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated February 4, 2016). Following review, the undersigned recommends the Court affirm the Commissioner's decision denying benefits.

### PROCEDURAL BACKGROUND

Plaintiff filed applications for benefits in September and October 2012, alleging disability as of October 31, 2011. (Tr. 13, 234-43). The claim was denied initially and on reconsideration. (Tr. 121-25, 128-45). Plaintiff (represented by counsel) and a vocational expert ("VE") testified at an administrative hearing on June 4, 2014. (Tr. 31-63). Following the hearing, an administrative law judge ("ALJ") issued an unfavorable decision finding Plaintiff not disabled. (Tr. 10-30). The Appeals Council denied Plaintiff's request for review, making the hearing

decision the final decision of the Commissioner. (Tr. 1-5); 20 C.F.R. §§ 404.955, 404.981. Plaintiff filed the instant action on February 4, 2016. (Doc. 1).

## FACTUAL BACKGROUND

Personal and Vocational Background

Plaintiff was born on May 20, 1955 (Tr. 37) and was fifty-nine years old on the day of the hearing. She has a high school education (Tr. 40) and past work experience as a nurse's aide (Tr. 405). She was last insured for benefits on September 30, 2013. (Tr. 288).

Relevant Medical Evidence

In May 2011, Plaintiff sought treatment at the emergency room for mild right shoulder pain. (Tr. 456-66). She had a full range of motion (Tr. 461) and was diagnosed with hypertension and radiculopathy (Tr. 465).

In July 2011, Plaintiff complained of low back pain, but had no chest pain or discomfort, no shortness of breath, and no cough. (Tr. 473-74). She was diagnosed with hypertension and asthma. *Id.* She had lower back tenderness on palpation, but negative straight leg raise testing. (Tr. 474).

At an appointment in August 2011, Plaintiff was assessed with hematuria, lower back pain and hypertension. (Tr. 469-72). An examination of her back, lungs, musculoskeletal system, and neurological system yielded normal results. *Id.*

Plaintiff went to the emergency room in June 2012 complaining of low back pain radiating to the left lower extremity. (Tr. 477-81). She was treated with pain medication. (Tr. 479). A physical examination was unremarkable. (Tr. 478).

In October 2012, Plaintiff completed a function report. (Tr. 364-71). She lived with, and assisted, an elderly woman, and reported no problems with personal care. (Tr. 364-65). She

cooked for herself and the elderly woman. (Tr. 364-66). Plaintiff noted she increasingly relied on her inhaler due to breathing difficulty. *Id.* She stated she could not go outside as frequently as she once did and the smell of chemicals caused difficulty breathing. (Tr. 365). She later stated, however, that she went outside daily "for different matters" and used public transportation. (Tr. 367). Plaintiff regularly cleaned the inside of her home and did laundry, but was unable to do any "outside work". (Tr. 366-67). She was able to go out alone, drive a car, and shop in stores. (Tr. 367). Plaintiff's hobbies included crocheting, reading, and watching television. (Tr. 368). She spent time with others, talking, visiting, and sometimes going out to dinner. *Id.* Plaintiff later stated, however, that she was limited with regard to social activities due to breathing difficultly and back pain. (Tr. 369). Plaintiff stated she was unable to lift more than ten pounds "sometimes" and was limited in her ability to walk and talk due to breathing difficulty. *Id.*

In January 2013, physician's assistant Richard Ochoa wrote Plaintiff was temporarily unable to work for three to six months due to Chronic Obstructive Pulmonary Disease ("COPD"), but explained he was "awaiting pulmonary function testing". (Tr. 514-16).

Plaintiff complained of 9/10 pain, shortness of breath with exertion, and wheezing to Dr. Angela Matthews in February 2013. (Tr. 542). A physical examination revealed a decreased range of motion and tenderness in her back, but no neurological or pulmonary abnormalities. (Tr. 545). In March 2013, Plaintiff reported to Dr. Matthews that her COPD was controlled on inhalers and denied respiratory complaints. (Tr. 547). There were normal pulmonary, musculoskeletal, and neurological results following physical examination. (Tr. 547-48).

In April 2013, during an appointment with Dr. Matthews, Plaintiff complained of shortness of breath. (Tr. 534). Dr. Matthews noted Plaintiff had never seen a pulmonologist and had missed an appointment with a specialist for her back pain. *Id.* Dr. Matthews reiterated to

3

Plaintiff that she did not prescribe chronic pain medication. *Id.* Plaintiff refused a steroid injection. *Id.* During a physical examination, Plaintiff had decreased breath sounds, but no wheezes or rales, and musculoskeletal and neurological systems were normal. (Tr. 534-35).

Also in April 2013, Plaintiff was diagnosed with an upper respiratory infection following a visit to the emergency room. (Tr. 604). She had decreased breath sounds (Tr. 604), and was administered nebulizer treatments and a steroid for an exacerbation of COPD (Tr. 606).

A May 6, 2013 office note reveals Plaintiff's pulmonary function test was completely normal (Tr. 531); despite that, she was assessed with COPD (Tr. 532). Dr. Matthews noted a presence of emphysematous changes in the lung parenchyma (Tr. 531, 540), but chest x-rays demonstrated no acute cardiopulmonary process (Tr. 540). Dr. Matthews refused to sign a form stating Plaintiff was unable to work for three months due to her lung condition because she thought Plaintiff was capable of working. (Tr. 531). Plaintiff complained of respiratory difficulty, but had normal results following examination of her pulmonary, musculoskeletal, and neurological systems. (Tr. 531-32). At the end of the month, Plaintiff reported improved breathing and "feeling well" on medication. (Tr. 565).

Also in May 2013, Plaintiff complained of 8/10 back pain (Tr. 575), but denied any respiratory symptoms (Tr. 577). She had a reduced range of motion with some tenderness to palpitation, but without trigger points or spasm. *Id.* Plaintiff had negative straight leg raise tests, and her sensation, strength, reflexes, and gait were all normal. *Id.*

Plaintiff complained of 4/10 pain in June 2013, but an average of 8/10 pain that week. (Tr. 573). A physical examination revealed an impaired lumbar range of motion, but a negative straight leg raising test. *Id.* She had a normal gait, no focal sensorimotor deficit, and normal and symmetric reflexes. *Id.*

4

The following month, Plaintiff reported to Dr. Matthews she was undergoing physical therapy and her back pain had improved. (Tr. 553). Although she reported using her albuterol inhaler daily and her Advair inhaler as needed, she was "informed that she [was] using them incorrectly." *Id.* Plaintiff had a normal pulmonary exam, reduced range of motion and tenderness in her back, and no neurological abnormalities. (Tr. 554).

Plaintiff returned to the emergency room in September 2013, complaining of back pain and reporting she had been discharged by her pain management doctor earlier that month. (Tr. 613). Emergency room staff noted Plaintiff had "numerous prescriptions from various providers". (Tr. 615).

In October 2013, Plaintiff went to the emergency room after working at a fair, and complained of dizziness, lightheadedness, and intermittent dyspnea. (Tr. 579). She was diagnosed with dehydration and her condition improved after receiving intravenous fluids. (Tr. 579, 584). Her chest was clear to auscultation with no wheezes, rales, or rhonchi. (Tr. 579). A physical examination of her back revealed a full range of motion with no tenderness, palpable spasm, or pain on motion. *Id.*

Plaintiff returned to the emergency room the following month, in November 2013, complaining of 8/10 back pain following a fall. (Tr. 615). Lumbar x-rays showed "[v]ery mild spondylotic changes". (Tr. 617).

At an emergency room visit in January 2014, Plaintiff complained of back pain after suffering a fall. (Tr. 623). A physical exam revealed back tenderness (Tr. 625) and x-rays revealed mild to moderate facet arthropathy at L5/S1 (Tr. 624, 626). She was diagnosed with a contusion of the back. (Tr. 625). Additionally, a pulmonary examination was normal. *Id.*

5

Plaintiff had an appointment in June 2014, for examination of a thyroid nodule, and was advised to possibly follow up depending on the results of lab testing. (Tr. 629-32).

Opinion Evidence

On October 30, 2012, state agency physician Robert N. Pyle, M.D., reviewed the file and determined Plaintiff could occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk for about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; and should avoid concentrated exposure to humidity, fumes, odors, dusts, gases, poor ventilation, and hazards. (Tr. 72-73, 80-81).

On December 18, 2012, a second state agency physician, Evelyn Jimenez-Medina, M.D., concurred with those findings. (Tr. 90-92, 99-101).

Hearing Testimony

At the administrative hearing on June 4, 2014, Plaintiff testified she became disabled in October 2011 due to back pain and discomfort. (Tr. 37). However, she also stated she worked at a concession stand at two separate county fairs for a few days in October 2013. (Tr. 38-39, 48). She became dizzy at the first fair and was taken to the hospital, and had to stop working after the second fair due to "smoke and allergies". (Tr. 38-39, 53). Plaintiff was supported financially by her fiancé, and had a driver's license but not a handicapped placard. (Tr. 40). She did not drive frequently during the week, but if she was feeling well would drive to the store. *Id.*

Plaintiff reported constant back pain that sometimes radiated into her legs. (Tr. 45). She also had difficulty breathing and would have to sit down to get catch her breath after walking from her bedroom to the kitchen. (Tr. 45-46, 51-52). Plaintiff used inhalers three to five times a day, which helped relieve her symptoms. *Id.* She estimated she could stand for five or six minutes at a time before needing to sit down due to back pain that radiated into her legs. (Tr. 50-

6

51). Plaintiff estimated she could sit for fifteen to twenty minutes in a desk chair before needing to stand. (Tr. 52). She stated she could lift a half gallon of milk, but not a full gallon. (Tr. 53). She was unable to walk across the street without "breathing hard" (Tr. 50), and had to stop and rest while climbing stairs at her home (Tr. 46). She testified she went to physical therapy for about two months and "in the beginning . . . felt like it was okay", but as time went on her condition worsened. *Id.* She reported being in the process of being put into pain management again. (Tr. 46-47, 55).

Plaintiff stated on a typical day she would have to "take a bunch of pills to get up", and then she would fix breakfast but was assisted by her fiancé. (Tr. 47). After breakfast, she would watch television for two to three hours in a recliner and then attempt to clean, but was again assisted by her fiancé. (Tr. 47, 52). While cleaning, she would become short of breath when bending over. (Tr. 51). She would then get dressed and stay in the house unless she had an appointment outside the home, in which case her fiancé took her to the appointment. (Tr. 47). However, she reported her fiancé occasionally traveled for work two or three weeks at a time and when that occurred she would "just have to basically do it on my own, and I just take it slow as I can." *Id.* When in town, her fiancé also assisted her with grocery shopping, but she was able to walk around the grocery store and would lean on the cart for assistance. (Tr. 49, 51). Plaintiff was sometimes awoken at night by her pain, but usually slept "pretty good" once she was asleep. (Tr. 52-53). She had no family or friends close by and relied solely on her fiancé, when he was in town, to assist her with activities of daily living. (Tr. 49).

ALJ Decision

In a written decision dated August 15, 2014, the ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

2.  The claimant has not engaged in substantial gainful activity since October 31, 2011, the alleged onset date.

3.  The claimant has the following severe impairments: degenerative disc disease of the lumbar spine and chronic obstructive pulmonary disease (COPD).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: she cannot climb ladders, ropes or scaffolds or more than frequently stoop, kneel, crouch, crawl or balance. The claimant must avoid concentrated exposure to humidity, fumes, odors, dusts, gases, poor ventilation and other pulmonary irritants. She must avoid all exposure to hazards such as unprotected heights or dangerous machinery.

6.  The claimant is unable to perform has no past relevant work [sic].

7.  The claimant was born on May 20, 1955 and was 56 years old, which is defined as an individual of advanced age, on the alleged disability onset date.

8.  The claimant has at least a high school education and is able to communicate in English.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 31, 2011, through the date of this decision.

(Tr. 10-22) (internal citations omitted).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for disability benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1.    Was claimant engaged in a substantial gainful activity?

2.    Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which

9

substantially limits an individual's ability to perform basic work activities?

3.     Does the severe impairment meet one of the listed impairments?

4.     What is claimant's RFC and can claimant perform past relevant work?

5.     Can claimant do any other work considering her RFC, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The court considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff raises two objections to the ALJ's decision: 1) the ALJ failed to state valid reasons for discrediting Plaintiff; and 2) the ALJ did not meet her burden at Step Five of the sequential evaluation. (Doc. 14).

At the onset, Plaintiff argues "the ALJ formed an incredulous opinion that a fifty-nine-year-old woman who weighed one hundred-seven pounds (Tr. 630) could lift and/or carry up to fifty pounds with frequent lifting of twenty-five pounds during a normal work day (the definition of medium work". (Doc. 14, at 11). Defendant is correct that "[a]ge and body habitus (i.e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the individual's medically determinable impairment(s) and related symptoms) are not factors in

10

assessing RFC in initial claims." SSR 96-8p, 1996 SSR LEXIS 5, at *7. As addressed below, the undersigned finds no error in the ALJ's RFC, which is supported by substantial evidence.

Credibility Assessment

Plaintiff first challenges the ALJ's credibility assessment. When making a credibility determination, the ALJ must make a finding based on a consideration of the entire record. SSR 96-7p[1], 1996 WL 374186, *1-3. But, an ALJ is not bound to accept as credible Plaintiff's testimony regarding symptoms. *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992). Analysis of allegedly disabling symptoms turns on credibility. *See Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726-27 (6th Cir. 2004). "Because of their subjective characteristics and the absence of any reliable techniques for measurement, symptoms are difficult to prove, disprove, or quantify." SSR 82-58, 1982 WL 31378, *1. In evaluating credibility an ALJ considers certain factors:

(i) [A claimant's] daily activities;

(ii) The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate [her] pain or other symptoms;

(v) Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [a claimant's] pain or other symptoms;

---

1. Plaintiff is correct that on March 28, 2016, this ruling was superseded by Social Security Ruling 16-3p, however because the complaint was filed and the ALJ's decision was rendered prior to this date, the old rule, SSR 96-7p, is applicable in this case. *See Cole v. Comm'r of Soc. Sec.*, No. 15-13292, 2016 WL 3647982, at *11, n. 2 (E.D. Mich. June 17, 2016), *report and recommendation adopted*, No. 15-CV-13292, 2016 WL 3626817 (E.D. Mich. July 7, 2016); *Caldwell v. Colvin*, No. 3:12-0594, 2016 WL 5710903, at *9, n. 2 (M.D. Tenn. Sept. 28, 2016), *judgment entered*, No. 3:12-0594, 2016 WL 5467931 (M.D. Tenn. Sept. 28, 2016).

(vi) Any measures [a claimant] use[s] or ha[s] used to relieve [her] pain or other symptoms; and

(vii) Other factors concerning [a claimant] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

Ultimately, it is for the ALJ, not the reviewing court, to judge the credibility of a claimant's statements. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (ALJ's credibility determination accorded "great weight"). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters,* 127 F.3d at 531. The Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. The Court may not "try the case de novo, nor resolve conflicts in evidence . . . " *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

After review of the record, the undersigned finds the ALJ's credibility determination supported by substantial evidence. First, the ALJ noted sporadic and conservative treatment regarding her alleged sciatica did not support the severity of her complaints. (Tr. 18). The ALJ pointed out Plaintiff sought emergency treatment for back pain twice between the alleged onset date of disability (October 31, 2011) and February 2013. (Tr. 18) (citing Tr. 477-79, 602). On February 18, 2013, she went the emergency room seeking treatment for sciatica after travelling cross-country on a bus. (Tr. 18) (citing Tr. 601-04). A physical examination revealed no pulmonary, neurological, or musculoskeletal abnormalities. (Tr. 602). The ALJ noted that while Plaintiff saw Dr. Matthews for follow up in February 2013, she did not pursue repeated pain management and rehabilitation specialist referrals until after the doctor declined to prescribe pain

12

medication. (Tr. 18) (citing Tr. 534-35, 542-45, 548). The ALJ noted Plaintiff had two appointments with a pain management and rehabilitation specialist in May and June 2013, and reported a 50% decrease in pain. (Tr. 18) (citing Tr. 573-78). The specialist recommended physical therapy and x-rays, and prescribed medication. (Tr. 18) (citing Tr. 577-78). While there are no records from physical therapy, Plaintiff reported to Dr. Matthews in July 2013 that physical therapy had improved her back pain. (Tr. 18) (citing Tr. 559-60). The ALJ noted there was no evidence Plaintiff sought treatment for back pain between when she last saw Dr. Matthews in July 2013 and when she reported she had been discharged by pain management in September 2013. (Tr. 18-19). In addition to the September 2013 emergency room visit, Plaintiff also went to the emergency room in November 2013 and January 2014 with complaints of back pain. The ALJ noted, on these occasions, she was administered medication and released without prescriptions for extended courses of pain medication. (Tr. 19) (citing Tr. 613-18, 623-25).

Second, with regard to back pain, the ALJ noted "[o]bjective medical evidence including diagnostic imaging and the examination findings of [Plaintiff's] treating physicians provide[d] minimal support for [her] allegations as to the severity of her functional limitations." (Tr. 19). She noted November 20, 2013 lumbar spine x-rays revealed uniform vertebral body heights and intervertebral disc spaces, and "[v]ery mild spondylotic changes. . . ". (Tr. 19) (citing Tr. 622). Lumbar spine x-rays taken on January 8, 2014, showed well-maintained vertebral body heights and mild to moderate facet arthropathy at L5-S1. (Tr. 19) (citing Tr. 626). The ALJ discussed physical examinations performed by Dr. Matthews showing "intermittently diminished range of motion" (Tr. 19) (citing Tr. 531-32, 534-35, 545, 559-60, 570-71), which were consistent with the pain management specialist and emergency room doctor's findings (Tr. 19) (citing Tr. 573, 577, 613-18, 623-25). The ALJ also noted: "No examining physician noted persistent gait

13

abnormalities or deficits of [Plaintiff's] sensory or motor functioning associated with her degenerative disc disease of the lumbar spine." (Tr. 19).

Third, the ALJ noted Plaintiff's sporadic and conservative treatment for COPD was inconsistent with the severity of her complaints. *Id.* She noted Plaintiff sought emergency room treatment for shortness of breath or upper respiratory infection on three occasions and saw Dr. Matthews for treatment between February to May 2013. *Id.* (citing Tr. 602-12). She pointed out there was no evidence Plaintiff sought treatment for COPD between August 2011 and her initial February 2013 appointment with Dr. Matthews, during which she complained of shortness of breath with exertion and a history of COPD. (Tr. 19) (citing Tr. 542). Additionally, the ALJ noted that Plaintiff reported her COPD was controlled with inhalers in March 2013 (Tr. 19) (citing Tr. 547-48), and corticosteroids in May 2013 (Tr. 19) (citing Tr. 570-71), but in July 2013 Dr. Matthews noted her use of inhalers was incorrect (Tr. 19) (citing Tr. 559-60). Since May 2013, the ALJ noted, there was no evidence Plaintiff sought any treatment for respiratory problems. (Tr. 19).

Fourth, with regard to Plaintiff's COPD, the ALJ determined objective medical evidence in the record supported the environmental limitations in the RFC, but nothing more restrictive. (Tr. 19). The RFC includes a limitation that Plaintiff "must avoid concentrated exposure to humidity, fumes, odors, dusts, gases, poor ventilation and other pulmonary irritants." (Tr. 17). To support this conclusion, the ALJ noted that while emphysematous changes were observed in Plaintiff's lungs, a pulmonary function test on April 30, 2013, was normal. (Tr. 19) (citing Tr. 533, 540). She pointed out chest x-rays taken on April 5, 2013, "found the lungs normally expanded with no infiltrates, consolidations or pleural effusions." (Tr. 19) (citing Tr. 540). X-rays taken on May 14, 2013, however, showed some results consistent with COPD. (Tr. 19)

(citing Tr. 621). The ALJ also mentioned that while Plaintiff occasionally exhibited diminished breath sounds or wheezes during physical examinations (Tr. 19-20) (citing Tr. 535, 604-06, 608-12), she more frequently exhibited normal breath sounds and respiratory effort with no wheezes, rales, or rhonchi (Tr. 20) (citing Tr. 469-70, 477-79, 531-32, 545, 547-48, 559-60, 570-71, 573, 577, 579-600, 602, 613-18, 623-25). Indeed, while Plaintiff did complain of shortness of breath to Dr. Matthews (Tr. 534, 556, 559, 565, 570), it was often noted to be "occasional" (Tr. 554, 556, 559) or "improved" (Tr. 565, 570).

Fifth, the ALJ appropriately considered Plaintiff's ability to perform certain daily activities. *See Walters*, 127 F.3d at 532 ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments."); *see also* 20 C.F.R. § 416.929(c)(3). The ALJ cited an October 9, 2012, function report in which Plaintiff stated she remained able to perform personal care and meal preparation. (Tr. 20) (citing Tr. 364-71). Plaintiff reported caring for an elderly woman with whom she lived; performing routine, indoor tasks including cleaning, laundry, and ironing; crocheting; reading; and watching television. *Id.* She shopped in stores for up to four hours at a time, used public transportation, and managed her finances. *Id.* The ALJ noted that in a November 2012 function report, Plaintiff "provided a similar account of her day-to-day activities". (Tr. 20) (citing Tr. 388-95).

Here, the ALJ appropriately considered Plaintiff's ability to perform daily activities in her determination Plaintiff could perform work at the medium exertional level. 20 C.F.R. 404.1529(c)(3); *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3. The undersigned finds no error in the ALJ's conclusion: "[Plaintiff's activities of daily living do not suggest functional limitations beyond those described in the [RFC]." (Tr. 20).

The ALJ's well-reasoned opinion, giving the above reasons for partially discounting Plaintiff's credibility, is supported by substantial evidence.

State Agency Physicians

Embedded within the credibility challenge, Plaintiff asserts the ALJ's reliance on the opinions of state agency physicians was improper. Plaintiff asserts "[t]he ALJ improperly gave the greatest weight to the reviewing physicians who reviewed the file in October 2012 (Tr. 68-83) and January 2013 (Tr. 86-103) before seeing all of the treatment records and testing." (Doc. 14, at 12). Following review, the undersigned finds no error in the ALJ's decision to give great weight to the opinions of the state agency reviewers.

Non-examining sources are physicians, psychologists, or other acceptable medical sources that have not examined the claimant, but review medical evidence and provide an opinion. 20 C.F.R. § 416.902. The ALJ will consider the findings of these non-examining sources as opinion evidence, except as to the ultimate determination about whether Plaintiff is disabled. *Id.* § 416.927. "[T]he opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight." *Douglas v. Comm'r of Soc. Sec.*, 832 F. Supp. 2d 813, 823-24 (S.D. Ohio 2011). This is because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." *Id.*; 20 C.F.R. § 416.927(c), (d); SSR 96–6p, 1996 WL 374180, at *2–3. "Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians. . . ." *Douglas,* 832 F. Supp. 2d at 823-24. These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency

of the opinion with the record as a whole, and the specialization of the treating source. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)).

Here, the state agency physicians provided the only medical opinions in the record. The ALJ therefore did not err in assigning great weight to their uncontested opinions, which are a reliable source upon which to base an RFC. *See* 20 C.F.R. § 404.1527(e)(2)(i); *Vorholt v. Comm'r of Soc. Sec.,* 409 F. App'x 883, 887 (holding an ALJ was justified in relying on the opinion of the state agency doctor). Additionally, substantial evidence in the record supports the ALJ's RFC determination.

In January 2013, a physician's assistant, Mr. Ochoa, noted Plaintiff would be unable to work for three to six months due to COPD, but explained he was awaiting the results of pulmonary function tests. (Tr. 515). First, Mr. Ochoa, as a physician's assistant, is not an acceptable medical source capable of issuing medical opinions. 20 C.F.R. §§ 404.1513, 404.1527. Second, the ALJ noted that Mr. Ochoa did not issue an opinion on Plaintiff's specific limitations with regard to lifting, carrying, sitting, standing, or walking. (Tr. 20) (citing Tr. 514-17); *see also* 20 C.F.R. § 404.1513(c)(1). Third, in May 2013, Dr. Matthews informed Plaintiff the pulmonary function tests were normal and refused to complete disability paperwork. (Tr. 531). Fourth, while Plaintiff is correct that the ALJ should still consider the opinion Mr. Ochoa pursuant to SSR 06-03p with regard to "key issues such as impairment severity and functional effects, along with the other relevant evidence in the file", the undersigned finds the ALJ did just that. She considered Mr. Ochoa's opinion and concluded: (1) it was not supported by objective medical evidence in the record; (2) the record lacked evidence of Mr. Ochoa examining Plaintiff during the relevant period; and (3) his opinion did not address Plaintiff's condition over a

continuous twelve month period. (Tr. 20). Fifth, even though there was some time lapse between the medical opinions and the administrative hearing, the ALJ considered the entire record and her RFC is supported by substantial evidence. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011) ("There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive case record.'"); *see also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513 (6th Cir. 2010) (finding no error where the state agency physician rendered an opinion without knowledge of certain medical issues because the ALJ considered them). Additionally, Plaintiff does not allege a significant change or medical evidence in the record after January 2013, when the second state agency physician reviewed the file and rendered an opinion.

Plaintiff also asserts that if the ALJ had deemed Plaintiff unable to perform medium work, but rather only capable of light or sedentary exertion work, the Medical-Vocational Guidelines would deem her disabled. (Doc. 14, at 13). However, as discussed above, the undersigned finds the ALJ's RFC finding Plaintiff could perform medium work supported by substantial evidence so it is unnecessary to address this argument.

Step-Five Analysis

In her second assignment of error, Plaintiff asserts the hypothetical question posed to the VE did not accurately represent her limitations. An ALJ may rely on a VE's testimony to provide substantial evidence that a claimant is not disabled. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001). At the final step of the disability analysis, the ALJ must decide whether, in light of the claimant's RFC, age, education, and past work experience, the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4). The burden shifts to the Commissioner to prove the existence of a significant number of jobs in the national economy that a person with

the claimant's limitations could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). To meet this burden, there must be a finding supported by substantial evidence that the claimant has the vocational qualifications to perform specific jobs. *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 799 (6th Cir. 2004). The VE's testimony may provide substantial evidence. *Smith*, 307 F.3d at 378. Importantly, however, only those limitations which are supported by the record need be included in hypothetical questions to the VE. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Here, the ALJ posed a hypothetical question to the VE that reflected all of Plaintiff's credibly established limitations. Specifically, the ALJ asked the VE to assume a hypothetical person of Plaintiff's age, education, and work experience who could perform work at the medium exertional level, except that she avoid concentrated exposures to humidity, fumes, odors, dust, gases, poor ventilation, and avoid all hazards including unprotected heights, and hazardous machinery. (Tr. 58-60). The VE testified such an individual could perform work in the national economy as an order puller, hand packager, and dietary aid. (Tr. 60). The undersigned finds ALJ's Step Five evaluation supported by substantial evidence.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned recommends the Court find the ALJ's decision supported by substantial evidence, and affirm the Commissioner's decision denying benefits.

       s/James R. Knepp, II
       United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).